McBRIDE, Judge.
Marcel J. Boucher, Jr., instituted this suit against Louisiana Coca-Cola Bottling Company, Ltd., to recover damages in the sum of $3,295, for injuries allegedly sustained as a result of the exploding of a bottle of Coca-Cola manufactured by the defendant. From a judgment in favor of plaintiff for $2,000, defendant has prosecuted this appeal.
Plaintiff’s case, as was brought out by his testimony and that of his witness, Rosario D’Amico, is summarized as follows: on July 30, 1948, Boucher was working as a bartender at 1101 North Claiborne Avenue. Just prior to closing time, between 1:30 and 2:00 o’clock, a. m., he was engaged in loading a bin in the electric beverage box with bottles of Coca-Cola from four full cases. He first removed all of the cold “Coke” from the bin, and then started to place the bottles from the top case into the bottom of the bin; he had placed six bottles in the bin, when, while putting in another bottle, one of the six bottles exploded, cutting the knuckle of the third finger of his right hand. He wrapped the cut with a bar towel and made an effort to continue the work, but at D’Amico’s insistence he went home, leaving D’Amico to finish loading the box and close the barroom.. At home, plaintiff was urged by his relatives to go to the hospital for attention.
Boucher testified that the cases of Coke in question had been delivered to the barroom about three days before the occurrence, and had been placed in the storeroom by an employee of defendant, and that until he brought the bottles from the storeroom to the bar to load them into the beverage box, they had not been touched by any one, and he denied having mishandled the bottles of Coca-Cola.
Plaintiff invokes the doctrine of res ipsa loquitur, the petition containing the specific allegation that he does not know what caused the bottle to explode, and that defendant is in a better position to explain the cause of the explosion than he is. There is no question that the doctrine applies in this case, for when plaintiff proved that the bottle was not mishandled after it left the possession of defendant, plaintiff made out a prima.facie case of negligence against defendant, as it must be assumed that the bottle would not have exploded unless there was some defect in the bottle or its contents, or both. Ortego v. Nehi Bottling Works, 199 La. 599, 6 So.2d 677; Piacun v. La. Coca-Cola Bottling Co., La. App., 33 So.2d 421; Lanza v. DeRidder Coca-Cola Bottling Co., La.App., 3 So.2d 217; Auzenne v. Gulf Public Service Co., La.App., 181 So. 54.
The defendant contends that in all probability the accident was proximately the result of rough handling of the bottles by Boucher. Evidence was produced that defendant’s plant is modern and equipped with the highest standard of appliances and machinery. Defendant’s production superintendent testified that the gas content of the finished product is between 39 to 42 pounds per square inch, and that at a temperature of 100 degrees Farenheit the pressure would not be more than 85 to 90 pounds per square inch. He explained that the machinery is equipped with safety valves which release if the pressure in the gas and water mixing tank exceeds 50 pounds per square inch, and that even when water and gas enters the bottle at 50 pounds pressure, the liquid foams out of the bottle. Added to these safeguards, defendant spot checks bottles from each machine every hour to determine the gas content, and the maximum pressure found is 42 pounds per square inch.
Defendant purchases its bottles from one of the largest and leading bottle manufacturers in the United States, and the quality of glass used in the manufacture of the bottles is the maximum according to the requirements of the United States Bureau of Standards.
Counsel stipulated that “bottle bursting” tests on Coca-Cola bottles selected at random, if performed in the court room: “ * * * would show that internal pressure ranging from six hundred pounds per square inch to one thousand pounds per square inch would be required to break the bottle.”
However, the production superintendent could give no reason or explanation why *703 the bottle exploded. Upon interrogation by the trial judge, he testified:
“Q. But is there any way in which it can explode from internal pressure unless the glass itself is weaker than it is expected to be? A. That is something I can’t answer.
“Q. Have you seen any explode? A. I have seen many explode but I don’t have the answer.
“Q. You have seen them explode without dropping them on pavement or concrete? A. Why they explode, we don’t know. I can’t answer. I don’t attempt to qualify as an expert on physics.”
The situation in the instant case is identical with that which engaged the Supreme Court in Ortego v. Nehi Bottling Works, supra, wherein the Court made the following observations: “It is impossible for the court to say with any degree of certainty exactly what caused the explosion of the bottle in this case. After reviewing all of the evidence before us, the only reasonable conclusion that we can arrive at is that the proximate cause of the explosion which resulted in injury to the re-lators was some fault on the part of the agents or employees of the respondents in the preparation or handling of the bottled product.” [199 La. 599, 6 So.2d 680]
We are not unmindful that the defendant has no means of disproving by eyewitnesses that the occurrence actually took place, and under the circumstances plaintiff’s evidence should be most carefully scrutinized and analyzed, especially when defendant has shown that because of the extreme care employed in the course of manufacture and in the process of bottling, it is improbable for a bottle to explode. See Russo v. La. Coca-Cola Bottling Co., La.App., 161 So. 909.
The apparent sincerity of Boucher and his witness, D’Amico, makes impression upon us, as it undoubtedly impressed the trial court, and after carefully sifting their testimony, which, of course, is unre-futed, we are led to the conclusion that the accident occurred in the manner related by them.
Defendant’s counsel, relying upon Piacun v. La. Coca-Cola Bottling Co., supra, wherein this court .denied recovery to a plaintiff because we did not believe his statements nor those of his witnesses regarding the occurrence, argue that Boucher’s testimony, like that in the cited case, is highly inconsistent and exaggerated.
The contentions of counsel in that regard are tenuous, and no good purpose would be served by burdening this opinion with a discussion of them.
Counsel further argue that the failure of plaintiff to produce as his witnesses three persons who were in the barroom at the time of the accident shrouds his claims with suspicion. We do not think so. Boucher testified that the persons in question were transient customers whom he does not know, and that he had never seen them previously, nor has he seen them since.
Plaintiff, in answer to the appeal, prays that the judgment be increased to $3,295, the amount prayed for in the petition.
The cut on the knuckle of plaintiff’s finger, and the complications which resulted therefrom, required surgery on two separate occasions. The wound was sutured at the French Hospital on the night of the accident, and thereafter plaintiff was treated by Dr. Mancuso, who described the nature of the wound and the course of treatment, which necessitated Boucher’s visiting the doctor’s office on numerous occasions for a period of three months.
Dr. Mancuso testified that because of suspected osteomyelitis, which suspicion resulted from a severe and persistent infection (“tumor synovitis”), he reopened the wound under anesthesia, and that it finally healed completely, leaving a slight permanent disability of the third finger, which prevents plaintiff from raising the finger, because of the scar tissue, and that the residual scar is noticeable and ugly. Plaintiff is permanently disabled from completely bending the finger.
The wage earned by Boucher at the time of the injury was $50 per week, and the time lost from his work was eleven weeks. His physician’s bill, cost of medi *704 cines, X-rays, and anesthetic approximated $195. The judgment appealed from awarded him $2,000, and taking into consideration the nature of the injury, the extended term of treatment, the scar, and the permanent disability, together with the financial loss sustained by plaintiff, we believe that the judgment is correct and does substantial justice, and we see no reason for disturbing it in any way.
On behalf of defendant, we were cited to several cases involving physical injuries caused by exploding beverage bottles, in each of which the award was less than the amount which the present plaintiff recovered. In none of the cited cases, however, were the injuries as severe as those suffered by plaintiff in the instant case, nor was it shown that the financial loss was as great.
The judgment of the lower court is affirmed.
Affirmed.